## WARDLAW & EDWARDS v. RAYFORD.

1. A new trial will not be granted for the improper admission of hearsay evidence, after objection made, if the same declarations are afterwards testified to by another witness without objection, and the matter is abundantly proved by other competent testimony.
2. Where a witness is permitted to testify as to declarations of a certain character made to him, and he details declarations of another character, not admissible under the rules of evidence, the proper practice is to move to strike out the answer of the witness.
3. Under the assurances of M. that V. had unincumbered title to a tract of land, P. took a mortgage of this land from V. to secure advances. Afterwards C., acting under like assurances from M., took an assignment of P.'s mortgage, and then took a new mortgage from V., including therein the balance due on the P. mortgage, and also a debt otherwise due him by V. This second mortgage was foreclosed and the land sold. In action by these purchasers against M. (who had ob-

tained possession of the land after this sale), *held*, that the purchasers were in privity with C., and through C. with P., and that M. was estopped from asserting title antedating these mortgages, as well by his representations to P. as by those made to C.

4. If the purchasers were not in privity with P., they would be regarded in equity as the assignees of the P. mortgage, and entitled to claim for that mortgage the estoppel attaching thereto.

Before HUDSON, J., Abbeville, October, 1886.

This was an action by Wardlaw & Edwards against E. H. Rayford and James McCelvey for the recovery of real property, commenced September 11, 1885. The case involved the question of the delivery of a deed by defendant McCelvey to Mrs. Vaughn, under whom plaintiffs claimed, and the question of estoppel. The Circuit Judge, after leaving to the jury the fact of delivery, charged upon the matter of estoppel as follows:

Now, gentlemen, there is another view of this case under the evidence; another proposition of law arises. The mortgagees here, Calhoun and Parker & Hill, testify that they made inquiry of James McCelvey himself before they would extend credit or take the mortgage, or about that time. Now, it is stated by Messrs. Parker & Hill, particularly Mr. Parker, that James McCelvey told him that the title was in Mrs. Vaughn, but that the paper was lost, got burned, something of that sort, "and if you are not satisfied with that, I will make the title over again." To Mr. Calhoun he said that the land was paid for, and that he had made a title; he does not remember whether he said to Mr. or Mrs. Vaughn, but to one or the other. Now, what is the effect of that? The effect of it is that Mr. James McCelvey now cannot deny it. He is now estopped, if it be so.

You have heard the witnesses. If those witnesses have told the truth, then Mr. James McCelvey has shut his mouth, and he could not in an action by Mrs. Vaughn against him, or by any one claiming under Mrs. Vaughn, deny it. That is what we call estoppel. Even if it were not so, his saying so makes it so for the purposes of this case. It shuts his mouth, and any one acquiring title under representations made by him which induced them to purchase—the party at the sale—would stand exactly on

the footing of the mortgagee. So if, gentlemen, one of you, knowing all the surroundings, knowing whether you have got a title to the land or not, is approached by one who makes an inquiry, saying: I wish to take a deed to that land, or a certain mortgage by a party, I wish to know the truth, and you say, Go ahead and take the property, and if you have any doubt about the title being lost, I will make you another, and the sale takes place and the party comes for the place under that mortgage, you cannot deny the fact.

If you come to the conclusion that the title was in Mrs. Vaughn, that ends the case and the plaintiffs must recover. If you come to the conclusion that the deed was not executed, but that afterwards these parties being in possession of the land, Mr. McCelvey said she (Mrs. Vaughn) had title and induced the party to take the lien, then when the purchaser comes forward, Mr. James McCelvey will have to stand up to what he said; he cannot get out of it. A representation which induces a party to make advances, say, and which, if not true, would work an injury to another (and you see in this case what an injury it would work to the purchaser), operates as an estoppel. If you come to the conclusion that he did say that, he is estopped, and your verdict will be for the plaintiff.

So, gentlemen, I have endeavored to explain the points of law in this case, and if you come to the conclusion that the plaintiffs have got title in this land, you will find for the plaintiffs. And if you come to the conclusion that the deed was never made out to Mrs. Vaughn, and that Mr. McCelvey has not estopped himself, then your verdict will be for the defendants. If the plaintiffs are entitled to recover, they are entitled to damages for wrong detention. Damages would be reasonable rent for use and occupation for the years 1885 and 1886, inasmuch as the defendants have been in possession and use and occupation. So make a reasonable estimate of what it is worth, and that will be the damages. So if you find for the plaintiffs, say, we find for the plaintiffs the land in dispute and so many dollars damages. If you find for the defendants, say, we find for defendants. Take the record.

The jury returned the following verdict: "We find for the plaintiffs the land in dispute and fifty dollars damages."

*Messrs. Perrin & Cothran*, for appellants.

*Messrs. Parker & McGowan*, contra.

July 13, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This action was brought by the plaintiffs to recover possession of certain real estate, of which the defendant, Rayford, was in possession, claiming to be the tenant of his co-defendant, James McCelvey. The answer admits the partnership of plaintiffs and the allegation that Rayford was in possession, claiming to be the tenant of McCelvey, and denies the other allegations of the complaint.

The claim of the plaintiffs is that the land in question was sold October 6, 1884, under proceedings to foreclose a mortgage, dated March 6, 1882, executed by Margaret Vaughn to one Calhoun, at which sale the plaintiffs became the purchasers; and the real controversy was whether Mrs. Vaughn had title to the land at the time she executed the mortgage to Calhoun. It was conceded that McCelvey was originally the owner of the land, but the plaintiffs claim that in 1872 he conveyed the land to Mrs. Vaughn, who immediately went into possession and remained in possession until the spring of 1885, when she moved off and possession was taken by Rayford as the tenant of McCelvey, and offered testimony tending to establish these facts. It was not denied that in 1872, when Mrs. Vaughn went into possession, a deed to her for the land was prepared at the request of McCelvey, and signed and sealed by him, but there is dispute as to the delivery of said deed. The plaintiffs, on the one hand, claim that while not actually put into the hands of Mrs. Vaughn, it was put in the hands of Mr. Mars to be recorded, and was afterwards destroyed by fire before it was recorded; while the defendants, on the other hand, contend that the deed was never actually delivered, and not intended to be delivered until Mrs. Vaughn paid the purchase money, and it was left with McCelvey's son to be held by him until such payment was made, and he deposited it for safe keeping in the safe in Mars's store where it was probably destroyed when the store was burned.

When Tolman, the person who drew this deed and who was

one of the subscribing witnesses, was on the stand as a witness in this case, after testifying to the preparation of the deed according to the instructions of McCelvey, and its signing and sealing by him, he was asked if he knew anything about the delivery of the deed, to which he replied: "I know nothing about the delivery of the paper directly, I may know something about it indirectly." Then, after stating that his information was not derived from McCelvey, in reply to a question, "What became of the deed?" stated that some time after the deed was signed he went to Mr. Vaughn's house to draw a mortgage (which, no doubt, was the mortgage from Mrs. Vaughn to Parker & Hill, hereinafter referred to), and when he was proceeding to say something that Mrs. Vaughn said on that occasion, he was stopped by an objection from defendants' counsel, when the court ruled the question competent. The witness resumed, and said when he called for the deed originally prepared by him (doubtless for the purpose of enabling him to draw the mortgage), "Mr. Vaughn asked for the papers and Mrs. Vaughn—" when he was again stopped by the objection of counsel, and the court ruled that "he can say that he called upon them but didn't get it; he can state the reasons." To which ruling exception was noted. The witness again resuming, testified as follows: "Mr. Vaughn remarked that the deed had been left with Mr. Mars, and in Mr. Mars's store, and it was burned; but I did not understand him to say that it (the paper) was burned in Mr. Mars's store or was burned here. It was left there to be recorded and it happened to be burned." It seems from the testimony that Mars's store was burned, and also that the court house with the public records were destroyed by fire in 1872.

It appears from the undisputed testimony that on June 15, 1881, Mrs. Vaughn executed a mortgage on the land in controversy to Parker & Hill, and Parker testified that before this mortgage was taken, having heard some controversy as to the ownership of the land, he applied to McCelvey, who told him that the land belonged to Mrs. Vaughn, and not to her husband; that he had conveyed the land to her; that the deed was put in Mars's hands to be recorded, and he did not know whether it was burned in the store or in the court house, and that he said:

"Parker & Hill need not be alarmed, that he would get Col. Tolman to draw up a new deed at any time we wanted it, and upon that condition we saw the Colonel and took him down to the house and got a new mortgage," in place of one they had previously received from David Vaughn, the husband of Mrs. Vaughn. This witness, in detailing what occurred when he and Tolman went to the house to get the mortgage, said : "Col. Tolman asked for the deed, and I think the answer was made by David Vaughn, any how, she didn't make any objection, that this deed had been put in Mars's hands to record, and it had been destroyed either in the court house or in the store." And here it will be observed that the "Case" does not show that any objection was interposed to the proof of David Vaughn's declarations by this witness. Hill, the other partner, also testified that when he asked McCelvey about the matter : "He told me that the land had been originally sold by himself to Mrs. Vaughn, and upon that I had Mr. Parker go down and had the mortgage made in Mrs. Vaughn's name, and surrendered the mortgage given us by David Vaughn." He also testified that McCelvey said : "that he would make us a title, if necessary, to the land—that the land was Mrs. Vaughn's," adding that he was perfectly satisfied with what he had already received from her, and never expected to make any further demands for payment.

It seems that when the debt secured by the Parker & Hill mortgage became due, and they were contemplating proceedings to enforce their mortgage, Calhoun, who held an unsecured claim against David for a mule, amounting to eighty dollars, paid Parker & Hill the balance due on their mortgage, about sixty dollars, and took an assignment of it, and proposed to Mrs. Vaughn that if she would give him a new mortgage for one hundred and forty dollars, covering both amounts, he would take up the balance due Parker & Hill. To this proposition Mrs. Vaughn assented, and accordingly the mortgage to Calhoun was executed, which was afterwards assigned to the plaintiffs, and their title as above stated is derived from their purchase at the sale to foreclose the Calhoun mortgage.

When Calhoun was examined as a witness he testified, in answer to a question whether he had ever had any conversation

with McCelvey in reference to the ownership of this land, as follows: "I had a conversation with him, I think it was about in 1880, and he told me that he sold the land to Mr. Vaughn." The witness goes on to explain how he came to have this conversation, by stating that in a negotiation with David Vaughn for the sale of a mule he learned that David claimed to have bought the land from McCelvey and paid for it by mauling rails, &c., and being doubtful about this statement, he says: "I asked Mr. McCelvey about it and he said, yes, he had sold him the land, and that the land was theirs." In his cross-examination he says that McCelvey told him, "that he had nothing to do with the land; that it was theirs, his, or Mrs. Vaughn's."

The jury having rendered a verdict in favor of the plaintiffs, and judgment having been entered thereon, the defendants appeal upon the following grounds:

"I. That the presiding judge erred in admitting as testimony the declarations to third parties of Margaret Vaughn, the mortgagor in the foreclosure proceedings, under which the plaintiffs claim title, concerning the delivery of the deed or the possession of the title from James McCelvey to Margaret Vaughn to the land in dispute.

"II. That the presiding judge erred in admitting as testimony the declarations to third parties of David Vaughn, husband of Margaret Vaughn, concerning the same matter.

"III. That the presiding judge erred in charging the jury that the declarations of James McCelvey to Parker & Hill—that Mrs. Vaughn had title to the land; that the deed of the land had been delivered to her, and other declarations concerning the title and its delivery which induced Parker & Hill to take a mortgage from Margaret Vaughn—estopped him from disputing the title of the said Margaret Vaughn in the action brought by the plaintiffs herein against the said James McCelvey; there being no evidence that the plaintiffs claimed through or by the said Parker & Hill.

"IV. The defendant, James McCelvey, excepts further to so much of the charge of the presiding judge as holds that the declarations of James McCelvey (concerning the title or the delivery of the deed aforesaid) to parties other than the plaintiffs

or their privies, estopped him from denying the title of the said Margaret Vaughn in this action."

In reference to the first exception, it will be sufficient to say that we are unable to find in the "Case," as prepared for argument here, that any declarations of Mrs. Vaughn were received in evidence; and this seems to be recognized by the counsel for appellants, as in his argument he confines himself to the question of the admissibility of David Vaughn's declarations, which were received in evidence. Be that as it may, however, it will be sufficient to consider the question of the admissibility of David's declarations, as they would both be governed by the same principles.

It will be observed that the declarations of David Vaughn were received in evidence twice—first, when the witness, Tolman, was under examination, when they were objected to; and, second, when the witness, Parker, was allowed to testify to the same declarations without objection. It would seem, therefore, to be a question of no real, practical importance, whether the declarations were competent or not—for even if they should have been ruled out when testified to by Tolman, under objection from defendants, there certainly was no error when the same declarations were received from the witness, Parker, without objection. But in addition to this it will be observed that the ruling of the court, as to this matter, which is the only thing for us to consider, was not that the declarations of David could be received to show the delivery of the deed by McCelvey, or even to show that the deed was left in Mars's store to be recorded, but the ruling simply was that the witness could state that he had called upon the Vaughns for the deed, "but didn't get it; he can state the reasons"— meaning, doubtless, that the witness could say that he was told that the deed was destroyed by fire. That was the extent of the ruling of the Circuit Judge, and if not strictly correct would constitute no ground for a new trial, when the testimony on all hands was that the paper claimed to be a deed had been burned.

It is true that the witness did go on to say that David Vaughn did say that the deed was left with Mars to be recorded, and this would touch the question of delivery; but aside from the fact that there was other testimony, clearly competent, to this same fact,

the Circuit Judge never ruled that such additional declaration of David Vaughn was competent, and it does not appear that there was any motion to strike out such additional declaration, which would have been the proper course, in case the witness, after being permitted to testify to declarations of a certain character—the reasons why the deed could not be had—should go on to detail declarations of another character going to show the delivery of the deed. Now, when we see that the very same fact which the declarations of David Vaughn are claimed to be incompetent to prove, was abundantly shown by other clearly competent testimony, and especially when we see that the Circuit Judge never did rule that the declarations of David were admissible to prove the delivery of the deed, or any fact tending to show that the deed had been delivered, but simply to show the loss of it, we think it clear that the second ground of appeal cannot be sustained. See *Smythe* v. *Tolbert*, 22 *S. C.*, 133.

The third and fourth grounds of appeal, as to the matter of estoppel, may be considered together. It will be observed, however, that the third exception seems to be framed under a misconception of what the Circuit Judge did actually say to the jury. It represents the judge as saying that the declarations of McCelvey to Parker & Hill alone, in regard to Mrs. Vaughn's right to the land, would estop him from disputing the title of Mrs. Vaughn in this action; whereas, in fact, the Circuit Judge, after calling the attention of the jury to the testimony of not only Parker and Hill, but also Calhoun, as to the declarations of McCelvey with respect to Mrs. Vaughn's title, instructed them, "If those witnesses have told the truth, then Mr. James McCelvey has shut his mouth, and he could not in an action by Mrs. Vaughn against him, or by any one claiming under Mrs. Vaughn, deny it." So that there is no practical foundation for the point principally urged by appellant's counsel, that a declaration of McCelvey that Mrs. Vaughn had title, made to Parker & Hill alone, would not operate as an estoppel in favor of these plaintiffs, who, as it is argued, do not claim under Parker & Hill.

But we are not disposed to rest the case upon this misconception of the judge's charge. There can be no doubt that in a

proceeding by Parker & Hill to foreclose their mortgage McCelvey would have been estopped by his declarations and assurances to them that the title was in Mrs. Vaughn from disputing her title, either in the action for foreclosure, or in an action brought by a purchaser at such foreclosure sale to recover possession of the land.   In other words, the estoppel would operate not only in favor of Parker & Hill themselves, but also in favor of all persons claiming under or in privity with them.   Now, certainly when Calhoun purchased the Parker & Hill mortgage and became the assignee thereof, he succeeded to all their rights, and with equal certainty, when the land was sold under the mortgage which he had been induced to take, not only by the representations made to him personally by James McCelvey, that he had no claim on the land, but also by the representations made to his assignors, Parker & Hill, the purchasers at such sale, the plaintiffs herein, succeeded to all his rights; and that is what we understand by privity.   The plaintiffs were in direct privity with Calhoun, and he with Parker & Hill, and if Calhoun could, by virtue of his privity with Parker & Hill, claim the benefit of the representations made by McCelvey to them, we see no reason why the plaintiffs, by reason of their privity with Calhoun, could not claim the same benefit which their vendor, Calhoun, could.

Even if the plaintiffs, as purchasers under the Calhoun mortgage, could not be regarded as strictly in privity with Parker & Hill, and should, therefore, be unable to establish their title against McCelvey, yet the Parker & Hill mortgage not having been satisfied, equity would certainly require that it should be enforced for the protection of the purchasers from Calhoun, the assignee thereof, and it is, and must necessarily be conceded, that under that mortgage the estoppel could be successfully set up.   A Court of Equity, with all the necessary parties before it, will not require a resort to such a roundabout proceeding, when the same result can be reached by a more direct proceeding.   But when, in addition to this, the testimony shows that McCelvey disclaimed title, not only to Parker & Hill when they took their mortgage from Mrs. Vaughn, but also to Calhoun, before he took his mortgage, there cannot be a doubt that the Circuit Judge was entirely right in instructing the jury that if they believed this

testimony, McCelvey was estopped from disputing the title of Mrs. Vaughn in this action.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.